THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* IRVING KNAPPER, Appellant.

First Department, November 7, 1930.

*Morris D. Reiss*, for the appellant.

· *Felix C. Benvenga, Assistant District Attorney*, of counsel [*Hugh F. Dalton, Deputy Assistant District Attorney*, with him on the brief; *Thomas C. T. Crain, District Attorney*], for the respondent.

· FINCH, J. From a judgment of conviction of murder in the second degree and from an order denying a motion for a new trial upon the ground of newly-discovered evidence, defendant appeals.

Concededly the defendant shot to death his business partner while they were working together on a job. He urges a reversal of the judgment upon the ground that because of the attitude of the court throughout the trial he was prejudiced in the eyes of the jury, and hence did not receive a fair and impartial trial. ·

· A consideration of this record forces the conclusion that the defendant was treated by the jury very leniently and that he might well have been convicted of murder in the first degree, thus sustaining the theory of the prosecution namely, that the appellant,

had deliberately planned to kill the deceased in order that the appellant might benefit by insurance, of which he was the beneficiary.

Upon the other hand, if all the facts testified to by the appellant be deemed established, he nevertheless failed to prove his defense, namely, of having acted in self-defense. According to his own testimony, he shot the deceased when the latter had turned his back, knowing that the deceased possessed only a crude home-made weapon which the appellant had formerly taken away from the deceased and the effectiveness of which weapon the appellant had ridiculed. Further, the appellant testified that this so-called weapon had failed to fire when the deceased attempted to shoot the appellant just before turning around and giving the appellant the opportunity to shoot him from behind. It is, therefore, clear that the appellant did not act in self-defense and that the jury were more than warranted in returning a verdict of murder in the second degree, although finding all the facts to be as alleged by the appellant.

We shall, however, proceed to a consideration of the grounds up n which the appellant bases this appeal. The appellant contends he was prejudiced by the attitude of the court and by interruptions of the court in the examination of the defendant and other witnesses throughout the course of the trial. In this the appellant is not sustained by the record. There were many interruptions by the court and participation by the court in the examination and cross-examination of witnesses and of the defendant. These, however, were due largely to the fact that the witnesses persisted in making their answers unresponsive to the questions and to the necessity of otherwise maintaining an adherence to the established rules of evidence. In general, the learned trial court found it necessary to take an active part in the trial in order to exclude incompetent, inadmissible testimony, to compel responsive answers, to exclude testimony volunteered, to clear up obscure testimony and to facilitate the orderly progress of the trial. But if in any instance the remarks of the court should be considered as bordering on the unfair, this is more than offset by the charge of the court to the jury, where the court carefully and at great length explained the reasons for action upon his part and instructed the jury that it should not be construed by them as denoting any opinion on the part of the court as to how the case should be decided, in these words: " You are free to decide what is true or not; not I. And if I make a mistake in referring to the evidence it is not intentional I assure you. It is done in cold blood, without any idea of doing anything except making the law clear to you. That is my duty.

" During the trial the attorneys perhaps thought I was captious in seeing that certain details be carried out and that certain care was taken. Well, the result is that there is not a dispute about anything. When Mr. McDonald was summing up he made a slip and Mr. Sheridan very graciously and politely called his attention to it. I have seen cases where there were long and acrimonious disputes as to what was said or what had not been said, or about the exhibits. Now, that was my only desire, to have a carefu'. and orderly trial. And it was not a desire to interfere with the counsel on either side or any reflection on them in any way because as I have told you counsel must be zealous. That is their duty.

" * * * You want him [the district attorney] to be zealous, diligent, on the job, alert, vigorous, relentless in running down alleged crime. And so the attorney for the defense must be equally diligent; he must resist every effort of the People to convict his client, of course, using only fair and honorable means.

" That does not mean that I believe, because I do not, that either Mr. McDonald or Mr. Sheridan would do anything unfair or dishonorable. As I said I am deeply appreciative of their courtesy to each other and to the Court and to the jury during this case.

" I say this to you because I want to completely remove from your mind any impression which you might get from what I say that I have any thought as to how this case should be decided by you. I don't care how you decide it. I must do my duty. I must be faithful to my oath of office, and I ask you to be equally faithful."

Not only is it the privilege of a trial court to take an active part in the trial of a case where necessary, but it is his duty so to do. (*People* v. *Ohanian*, 245 N. Y. 227; *Adler* v. *United States*, 182 Fed. 464; *People* v. *Perrin*, 224 App. Div. 546; affd., 251 N. Y. 509.)

Taking up now more specifically the more important instances upon which the appellant relies, the appellant complains of the attitude of the court in declaring "We will have a stricter trial from this time on," and urges that the court " proceeded to exact of the defendant's witnesses a refined precision in responsiveness to questions which it was humanly impossible to comply with." The above-quoted remark of the court was not brought out in connection with the examination of a witness for the defendant, but was made in connection with the cross-examination by the defendant of one of the principal witnesses for the People. The court previously had cautioned this witness against and reprimanded him for giving unresponsive answers and for volunteering testimony. The remark was provoked by the attitude of counsel

for appellant in continuing to argue with the court after it had made a definite ruling. The contention that thereafter the trial court was overmeticulous in exacting a compliance with the technical rules of evidence, is in no way justified by the record. It would unduly protract this opinion to take up at length every complaint, but a careful examination will show the court justified by the rules of procedure in each and every instance. The defendant sought to justify his acts in approximately one hundred and fifty pages of this record. The complaints of appellant, even if justified, which they are not, loom very small in the trial of a cause which consumed from June seventeenth until June twenty-eighth, or a period of over ten days. Moreover, at the conclusion of the evidence the charge of the court was manifestly fair to the appellant and presents not a single error of law.

At the close of the charge the appellant's counsel called the attention of the court to several respects wherein he considered the charge of the court was susceptible of creating inferences prejudicial to the appellant by assuming the existence of certain facts which had not been proved. The court thereupon recharged the jury so as to obviate any pretext for the appellant's objections, and further granted all the requests of the appellant to charge, except such as had already been adequately covered by the charge.

The appellant further urges that a substantial right of the appellant was violated by an alleged refusal of the court to permit jurors to ask questions of the witnesses. There was no such general refusal on the part of the court. The question arose in two instances. The first, when one of the jurors inquired if he might ask the People's witness McDermott a question. At that time the court had adjourned for the day. " I will say for my own opinion that I do not think the jurors ought to ask any questions. There are two lawyers here well qualified to bring out all that is needed. * * * My experience has been that most questions asked by jurors are not proper legal questions. * * * Furthermore, when a juror begins to ask questions he is apt to take sides one way or the other, and this is not the time for you to decide anything. All you have to do now is listen and remember keep an open mind. I think the lawyers are very well qualified to protect their respective interests. I do not think they need any assistance from anyone who is not a lawyer. That is not said without due respect. I believe in every man minding his own business, doing his own duty. * * * Now if however there is anything later on which the juror thinks that he does not understand, why we will allow a recall of the officer. That is all respectfully submitted for the consideration of the jury."

In the second instance, the defendant's counsel, with the permission of the court, was explaining to the jury a certain diagram, an exhibit in evidence, whereupon a juror inquired of counsel whether the witness could see through the partition. This question obviously was incompetent. Counsel, of course, could not testify as to what a witness upon the stand could see. This question elicited from the court the following: " The jurors must not ask any questions. If you do not understand it, you may ask to have any paper made plain, but do not try to add anything to it because you will make endless confusion."

The counsel of the defendant then brought out from the witness testimony that the partition was entirely of wood but that the door was open and that the witness could see through the open door. There thus appears to have been no prejudice to the appellant by the withholding from the jury of any information which they desired. To what extent under the circumstances peculiar to the trial of each cause questions should be permitted by jurors, is a matter that should be left to the discretion of the trial court. A consideration of the question is to be found in the recent case of *White* v. *Little* (131 Okla. 132, 134; 268 Pac. 221), where the court said: " From all the authorities we have been able to find on this subject, we reach the conclusion that it is not error for a juror to interrogate witnesses where it is clear that such interrogatories are propounded in good faith and for the purpose of eliciting facts overlooked by counsel, but this privilege should be exercised with great care and under strict admonition from the trial judge. Generally jurors are not familiar with the rules governing the admission of evidence, and in the very nature of such a situation counsel quite naturally will hesitate to object to a question propounded by a juror even though it may be incompetent, and this practice is so dangerous to the rights of the litigant that we cannot encourage the practice, although where this practice is indulged in, the obligation rests upon the party complaining to show that his rights have been prejudiced thereby."

It follows that the record in this cause discloses no valid ground for the reversal of the judgment appealed from and even if any such be found to exist it should be disregarded in view of the clear guilt of the appellant. (Code Crim. Proc. § 542.)

We come now to consideration of the application for a new trial upon the ground of newly-discovered evidence. Upon the trial it was shown that a crudely made pistol had been found alongside the body of the deceased, by his right hand. The appellant had testified that the deceased had attempted to shoot him with this weapon and that in self-defense he killed the deceased. Also that upon two prior occasions he had seen the weapon in the possession

of the deceased, once when the deceased threatened to shoot the appellant, and again when the deceased, in the presence of his aunt, took the gun out of his pocket and threw it upon the bed. The aunt of the deceased denied that she had ever seen the gun or any other gun in the possession of the deceased. No witness other than the defendant testified to ever having seen a gun in the possession of the deceased, notwithstanding inquiry had been made among persons connected with the deceased in business and of friends and relatives. It also appears that upon the trial a witness for the People testified that the deceased was left-handed; whereas, the appellant, a sister of the appellant and the bookkeeper of the appellant testified that the deceased was right-handed. Subsequent to the judgment of conviction the appellant sought a new trial upon affidavits of three former employees of the appellant and his deceased partner, to the effect that they had seen the aforesaid gun in the possession of the deceased and also that the deceased was right-handed. There also was submitted an affidavit of the People's witness who upon the trial had testified that the deceased was left-handed, and who also was a former employee of the appellant and his deceased partner, to the effect that he had not intended to testify that the deceased was left-handed, but that the deceased was ambidextrous.

We are of the opinion that under the facts of the case at bar the aforesaid evidence is not such as authorizes the granting of a new trial. The power to grant a new trial upon newly-discovered evidence is of statutory origin (Code Crim. Proc. §§ 462–466) and can only be exercised in strict compliance with the statute. In *People* v. *Priori* (164 N. Y. 459, 472) the Court of Appeals declared the requirements of newly-discovered evidence which under the statute would warrant the granting of a new trial, as follows: " 'Newly-discovered evidence in order to be sufficient must fulfill all the following requirements: 1. It must be such as will probably change the result if a new trial is granted. 2. It must have been discovered since the trial. 3. It must be such as could have not been discovered before the trial by the exercise of due diligence. 4. It must be material to the issue. 5. It must not be cumulative to the former issue. 6. It must not be merely impeaching or contradicting the former evidence.' "

In the case at bar the evidence relied upon clearly falls before the requirement that it should have been discovered by the exercise of due diligence. In a trial where the announced theory of the prosecution was that the defendant had committed a deliberate, brutal murder of his partner in business and thereafter as an aid to escape punishment had planted a home-made pistol by the side

of the deceased and a bottle of whisky in his pocket, it became the crux of the defense to prove ownership of the home-made weapon. Due diligence would have suggested that every employee, present and former, of the partners should have been examined as the most likely persons to know of this ownership. Further, this alleged·new evidence is cumulative and is not such as will probably change the result if a new trial is granted, in view of the over-whelming preponderance of the guilt of the defendant.

It follows that the judgment and order appealed from should be affirmed.

DOWLING, P. J., McAvoy, MARTIN and O'MALLEY, JJ., concur.

Judgment and order affirmed.