[No. 27290-0-I.   Division One.   July 27, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. RAMIRO
PALOMIN MUNOZ, *Appellant.*

*Rita Griffith* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Michele Shaw, Deputy,* for respondent.

BAKER, J. — Ramiro P. Munoz appeals his conviction of one count of delivery of a controlled substance, cocaine. The issue is whether the trial court's procedure in permitting juror questions 'violated the defendant's constitutional rights to a fair trial by an unbiased jury and to effective assistance of counsel, and whether the procedure was improper rule-making. We find that the issue was not properly preserved

and does not raise constitutional concerns that would merit our consideration absent an objection below. We therefore affirm.

## I

The trial court made opening remarks to the jury as follows:

> Now, many jurors feel that they would like to have the ability to ask questions of the witnesses in a trial. We cannot permit you to actually orally ask questions, but in the event you have something that you really feel should be asked, I do permit you to write down whatever it is that you want to ask a question about, and you can deliver it to [one of] the court staff, and it will be given to me. And then I will share that with the lawyers. The lawyers can either work it into their questioning or not, as they choose to.
>
> If you do want to ask a question, you should not discuss that question either before you draft it or after you draft it with any of your fellow jurors. In other words, we don't want your thought processes affecting other jurors' perception of the evidence.
>
> . . . .
> . . . [A question submitted] might not be utilized because of the fact that it might be an improper question in some way, or it might be just totally irrelevant.

Neither party objected to the court's comments. Following counsel's examination of a witness for the State, two jurors submitted the following written questions: "Did the balloon found on the defendant contain anything? If so, what?" "How do you get the drugs in the ballon [*sic*]."

The record then contains the following colloquy:

> THE COURT: Place that on the front bar there and the attorney can review those.
> MR. STOKSTAD: I have no objection.
> THE COURT: Let me make it clear for the record. After the attorneys indicated that there were no further questions, according to the Court's procedure which I explained on the record before, two jurors submitted proposed written areas of inquiry. And I have reviewed those myself and shared them with counsel.
>
> Mr. Stokstad, do you have any further questions?
>
> REDIRECT EXAMINATION
> BY MR. STOKSTAD:
> Q: Officer, just for clarification, the balloon that you discovered, did it contain anything inside it?

A: No, it did not.

Q: Now, let me just ask you, based upon your experience, how are narcotics packaged in a balloon?

A: Normally, it is first wrapped in a clear plastic wrapper, and it is then placed into the bottom of a small balloon. And the balloon is cut, and the small end is tied. And it is a very tight wrap.

MR. STOKSTAD: Thank you. I have no further questions.

MR. SEARCE: Was there one other question or were the two questions basically the same thing?

THE COURT: Well, I showed you both the written questions.

MR. SEARCE: I just want to make sure they have both been asked of the officer.

MR. STOKSTAD: I believe they were both asked.

THE COURT: Anything further, Mr. Searce?

MR. SEARCE: No.

Subsequently, a juror submitted additional questions in writing as follows: "Was the syringe loaded with or had any evidence of a narcotic on the defendant? Was the syringe sheathed with a needle or was the syringe capped to hold any narcotic?" Later, the following colloquy occurred:

MR. STOKSTAD: Your Honor, the State will be recalling Officer Unger at this point.

THE COURT: Mr. Searce?

MR. SEARCE: That's fine.

MR. STOKSTAD: Your Honor, could we have a side-bar?

THE COURT: All right.

(Discussion at the side bar outside the hearing of the jury.)

THE COURT: I will just tell the jury that upon review of the last suggested area of inquiry that was submitted by one of the jurors, I have made a determination that that particular area of inquiry is irrelevant to the charges in this particular case. All right. Go ahead.

The jury found the defendant guilty as charged.

## II

■ Munoz argues that in spite of his failure to object, his due process challenge may be raised for the first time on appeal because it is of constitutional magnitude, citing RAP 2.5(a). We disagree, finding no prejudice that affected his right to a fair trial. Without a showing of prejudice, Munoz' "generic due process claim" does not merit review. *See State v. Lord,* 117 Wn.2d 829, 895, 822 P.2d 177 (1991).

■ Several cases have discussed the failure to object under similar circumstances. For instance, in *People v. McAlister*, 167 Cal. App. 3d 633, 213 Cal. Rptr. 271 (1985), the court held that it was unnecessary for counsel in a criminal case to object to the improper nature of a juror question in order to preserve the right to raise the issue on appeal. The court noted that the risk of prejudice is too great to require counsel to make the Hobson's choice of risking offending a juror by an objection or allowing improper or prejudicial testimony to be given. *McAlister*, at 644. However, that case is distinguishable because the questions there were propounded orally by the jurors, *McAlister*, at 637-38, rather than being prescreened by the court and counsel.

In *State v. Williamson*, 247 Ga. 685, 279 S.E.2d 203 (1981), it was held that the failure to object below to the procedure of juror questions and to any specific question precluded review of the merits on appeal. The court noted that the issue did not involve constitutional rights. *Williamson*, at 686 n.1.

Only one jurisdiction, Nebraska, has prohibited juror questioning on due process grounds. *State v. Zima*, 237 Neb. 952, 468 N.W.2d 377 (1991). However, *Zima* is distinguishable on the same grounds as *McAlister*, *i.e.*, jurors were permitted to directly question witnesses with no prior screening of their questions by the court. We have found only one other judicial opinion which suggests that allowing jurors to ask questions of witnesses may raise constitutional concerns. In a concurring opinion in which two out of three judges joined, Chief Judge Lay of the Eighth Circuit opined that the potential loss of the jury's neutrality under such circumstances implicates the due process clause of the Sixth Amendment. *See United States v. Johnson*, 892 F.2d 707, 711-13 (8th Cir. 1989) (Lay, C.J., concurring).

We do not foreclose the possibility of implicating a defendant's due process rights by the manner in which juror questions are handled in any given case. We are convinced, however, that the mere fact that juror questions are asked dur-

ing a trial does not automatically implicate any constitutional right. *See State v. Monroe*, 65 Wn. App. 245, 254, 828 P.2d 24 (1992). Moreover, we conclude that under the circumstances of this case no constitutional rights were implicated.

We observe that WPIC 4.66 addresses juror questions. It provides that the following oral instruction be given *if* a juror expresses a desire to question a witness.

> A juror who wants to ask a question of a witness must wait until both lawyers have completed their questioning of that witness. If at that time the juror still has some question, the juror will be given an opportunity to write it out and submit it to the court so that it can be decided whether the question is legally proper.

Thereafter, questioning by counsel would proceed to a conclusion, whereupon the trial court would receive any remaining juror questions in writing. The note on use to WPIC 4.66 explains that if such a question is submitted,

> the court should excuse the jury at once to give counsel an opportunity to object to the question in the absence of the jury. The court should thereafter either propound the question to the witness in the presence of the jury or tell the jury that the question may not be asked under the rules without disclosing to the jury what objections, if any, were made by either counsel.

The comment to the instruction explains that "[t]his procedure allows the trial court to keep strict control of questions to be asked and obviates the element of oppression on counsel who may be reluctant to object to a question asked by a juror."

A procedure involving juror questioning must result in actual prejudice before an appellate court is justified in reversing a judgment. *See, e.g., DeBenedetto v. Goodyear Tire & Rubber Co.*, 754 F.2d 512, 517, 80 A.L.R. Fed. 879 (4th Cir. 1985); *McAlister*, at 645. Most of the prejudice-avoiding procedures suggested in WPIC 4.66 were followed in this case. One difference is that the trial court's comments were not triggered by a juror expressing a desire to question a witness. Rather, the court raised the subject in

its opening remarks. Furthermore, no recess was taken upon the submission of the first two questions to allow counsel an opportunity to object outside the jury's presence. The record appears to indicate, however, that neither counsel had objections to these questions.[1] Another minor deviation from the suggested practice occurred when the court allowed the prosecutor to propound the jury's questions. The defendant suggests this created an appearance that the State was the arm of the jury. It appears, however, that the court was merely attempting to follow the typical order of questioning by allowing the prosecutor to include those questions as part of his redirect. Then defense counsel was given the opportunity to ask further questions.

The departures from the procedures suggested in WPIC 4.66 were minor in nature and did not prejudice the defendant. Indeed, the officer's negative answer to the question as to whether the balloon contained anything benefited the defendant. The second question as to how narcotics are packaged in balloons was neutral and merely a clarification of the prior testimony. The third question regarding the syringe found on the defendant was not asked. We do not perceive, therefore, that any harm resulted to the defendant from these questions. Furthermore, any prejudice resulting from the prosecutor asking the questions would be minimal, and appears to have been mitigated when defense counsel said he wanted "to make sure they have both been asked".

Nonetheless, we note that it is preferable to follow the procedures outlined in WPIC 4.66, especially the practice of instructing the jury on the subject *only if* a juror expresses a desire to question a witness. Potentially serious problems could arise from juror questions. In some instances, the adversarial procedure of a trial could be compromised.

We conclude that this case presents no manifest error affecting a constitutional right. The jury's neutrality was

---

[1]Evidently counsel initiated an objection to the third juror question at a sidebar conference, after which the trial court declined to allow the question to be asked without disclosing the nature of the objection, as suggested by the note on use to WPIC 4.66.

sufficiently protected and counsel was given an adequate opportunity to respond to the juror questions.[2] Since appellant failed to object below, and because this case does not fall within any of the exceptions to RAP 2.5(a),[3] we decline to consider the merits of this issue.

Affirmed.

SCHOLFIELD and PEKELIS, JJ., concur.

Review denied at 120 Wn.2d 1024 (1993).

---

[2]On this basis we decline to address both the due process and the effective assistance of counsel arguments. Furthermore, we do not address Munoz' nonconstitutional argument that the trial court's procedure constituted improper rulemaking.

[3]*See, e.g., Bennett v. Hardy,* 113 Wn.2d 912, 918, 784 P.2d 1258 (1990) (statute not addressed below but pertinent to the substantive issues; question raised affects the right to maintain the action; necessary to address issue in order to render a proper decision); *State v. Card,* 48 Wn. App. 781, 784, 741 P.2d 65 (1987) (applicability of a court rule).