No. 66,224

STATE OF KANSAS, *Appellee*, v. JAMES E. RICHMOND, *Appellant*.

(827 P.2d 743)

Opinion filed February 28, 1992.

*Jeffrey E. Goering*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Robert T. Stephan*, attorney general, were with him on the brief for appellee.

*Steven R. Zinn*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the brief for appellant.

The opinion of the court was delivered by

McFARLAND, J.: James E. Richmond appeals his jury trial convictions of aggravated kidnapping (K.S.A. 21-3421); aggravated robbery (K.S.A. 21-3427); aggravated burglary (K.S.A. 1991 Supp.

21-3716); burglary (K.S.A. 1991 Supp. 21-3715); misdemeanor theft (K.S.A. 21-3701); battery (K.S.A. 21-3412); and two counts of rape (K.S.A. 21-3502).

Victim P.K. testified she returned to her Sedgwick County residence at about 10:15 a.m. the morning of January 22, 1990, after attending an exercise class and running some errands. She observed an unfamiliar automobile parked in front of her home. Upon opening the door to her residence, P.K. saw her vacuum cleaner sitting in the hallway although it had not been there when she had left the house that morning. She entered the great room where a black man rushed at her and hit her with his fist, knocking her to the floor. She later identified defendant as her assailant. Defendant forced her to walk to her bedroom, picked her up, and threw her on the bed. He raped her and then walked her into the bathroom and back to the bed. After pushing P.K. back on the bed, defendant tied her hands and feet with nylon stockings he had removed from a dresser. He then left the room for what seemed to the victim a long period of time. When he returned, defendant untied the victim's feet and raped her again. She was retied. Defendant held some type of metal weapon to the victim's throat and took a gold necklace from her neck. Then he jerked the telephone wire from the wall and threatened to return and kill P.K. if she reported the crime. After defendant left, the victim was able to get free of her bonds and run to a church from which the police were summoned. Approximately one hour elapsed between the victim's arrival home and the call to the police.

P.K.'s daughter lived next door to P.K. Her residence was burglarized the same morning and a microwave was taken. These occurrences are the basis of the burglary and theft convictions.

Additional facts will be stated as necessary for the discussion of particular issues.

## AGGRAVATED KIDNAPPING

At trial, defendant moved to dismiss the aggravated kidnapping charge on the ground the movement of the victim was merely incidental to the rapes. The motion was denied. Defendant contends the denial of his motion was error.

K.S.A. 21-3420 defines kidnapping as follows:

"Kidnapping is the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person:

(a) For ransom, or as a shield or hostage; or

(b) To facilitate flight or the commission of any crime; or

(c) To inflict bodily injury or to terrorize the victim or another; or

(d) To interfere with the performance of any governmental or political function."

Aggravated kidnapping, K.S.A. 21-3421, "is kidnapping, as defined in section 21-3420, when bodily harm is inflicted upon the person kidnapped."

The complaint/information charged that the victim was taken or confined with the intent to facilitate the commission of rape, aggravated robbery, or aggravated burglary. The instructions used the same language. Thus, the facilitation of flight provision of K.S.A. 21-3420(b) is not involved in the issue herein.

The leading case on what is required to be proven to establish the facilitation of the commission of any crime provision of K.S.A. 21-3420(b) is *State v. Buggs*, 219 Kan. 203, 547 P.2d 720 (1976). In *Buggs*, the defendant Buggs and codefendant Perry confronted a woman and her son as they left the Dairy Queen where they both worked. The woman was carrying the day's receipts in her purse. The defendants forced the victims to return to the store and took the money from the purse. While in the store, Perry held what was believed to be a gun aimed at the son while Buggs raped the woman at knifepoint.

The claim was made in *Buggs* that the movement and confinement of the two individuals was only incidental to the robbery and did not constitute the separate offense of aggravated kidnapping. We held:

"Our kidnapping statute, K.S.A. 21-3420, requires no particular distance of removal, nor any particular time or place of confinement. Under that statute it is the fact, not the distance, of a taking (or the fact, not the time or place, of confinement) that supplies a necessary element of kidnapping." Syl. ¶ 7.

"Under K.S.A. 21-3420 a taking or confining is a kidnapping if its purpose is to 'facilitate' the commission of any crime, even if the crime facilitated be a less serious crime such as robbery or rape." Syl. ¶ 8.

"The word 'facilitate' in K.S.A. 21-3420 means something more than just to make more convenient. A taking or confining, in order to be said to 'facilitate' a crime, must have some significant bearing on making the commission of the crime 'easier.' " Syl. ¶ 9.

"If a taking or confining is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:

(a) Must not be slight, inconsequential and merely incidental to the other crime;

(b) Must not be of a kind inherent in the nature of the other crime; and

(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection." Syl. ¶ 10.

In the case before us, P.K. arrived home during the burglary thereof. She was forced from the great room, through the living room and a hallway into a bedroom, raped, tied up, raped again, and retied. The tying up of the victim aided the defendant by incapacitating her while he searched through her house and gave him time to remove any items he desired to take. The burglary of the daughter's residence and the theft of the microwave oven therefrom may well have occurred during this interim period. The defendant, from repeated questions and remarks to the victim, was concerned about the fact the victim had seen his automobile and also about whether any other person might be coming to the house. The removal of the victim from near the entrance to the home to a distant bedroom lessened detection of the crime by anyone arriving at the residence. A pillow was placed on the victim's face while she was tied to keep her from seeing her assailant. Defendant searched the jacket the victim was wearing while she was tied. Also, the necklace the victim was wearing was removed while she was tied. The victim's hands were tied throughout the second rape. Thus, this confinement of the victim facilitated the commission of the respective crimes.

We have no hesitancy in concluding the three-pronged test enunciated in *Buggs* has been satisfied herein and that this issue has no merit.

## MULTIPLE RAPE CONVICTIONS

The defendant next argues that the two rapes are related so closely in time and circumstance that only one offense was committed.

In *State v. Dorsey*, 224 Kan. 152, Syl. ¶ 8, 578 P.2d 261 (1978), the court said:

"It is a generally accepted principle of law that the state may not split a single offense into separate parts. Where there is a single wrongful act it generally will not furnish the basis for more than one criminal prosecution."

*Dorsey* is a four to three decision which reversed two of three attempted rape convictions and one of two sodomy convictions on the basis that the charges "grew out of one incident, with one victim under a single set of circumstances." 224 Kan. at 154. In *Dorsey* as in the case before us, the time frame was approximately an hour involving a single victim. Whereas the propriety of the result reached in *Dorsey* is questionable, the case may be distinguished. In *Dorsey* the victim was confined and almost continuously subjected to sexual assault. In the case before us, there were clearly two separate incidents. The victim here was raped and then tied up while the defendant left the room to continue his search of the home. How long he was absent is unknown. The victim testified the period seemed like two hours, which is an impossibility due to the time frame involved. The exaggeration of time is understandable given the victim's terror in her helpless condition, but the time involved establishes a clear and substantial break in the events. When defendant returned, he untied the victim's feet and raped her again. We conclude the two convictions of rape are not multiplicitous.

## BATTERY

For his next issue, defendant argues his battery conviction cannot stand as it is multiplicitous with the aggravated kidnapping and rape convictions. This same multiplicity argument was made at trial and was overruled on the basis that the defendant's striking of the victim in their initial confrontation in the great room preceded the acts constituting the kidnapping and rapes. We agree. The victim's arrival caught the defendant in the victim's residence in the midst of a burglary. When she entered the room where the defendant was, he rushed at her and knocked her down with his fist. He then forced her to walk to the bedroom. This blow was an act independent of the kidnapping and rapes and not necessary for their commission.

The facts herein are distinguishable from those in *State v. Lassley*, 218 Kan. 758, 545 P.2d 383 (1976), wherein the victim was threatened with harm from defendant's knife if she resisted

the rape or did not move where directed in the kidnapping. The conviction of aggravated assault based upon the same threats was held to be multiplicitous as the threats were used to satisfy the force elements of the other two crimes.

We find this issue to be without merit.

## AGGRAVATED BURGLARY

The complaint/information and jury instructions charged that defendant entered P.K.'s residence or remained therein with the intent to commit aggravated kidnapping, rape, or theft.

For his next issue, defendant contends his aggravated burglary conviction must be reversed because there was insufficient evidence that he entered P.K.'s residence with the intent to commit two (aggravated kidnapping and rape) of the three alternatively stated crimes.

In support of this contention, defendant directs our attention to *State v. Garcia*, 243 Kan. 662, Syl. ¶ 6, 763 P.2d 585 (1988), which states:

"A general verdict of guilty must be set aside if the jury was instructed that it could rely on any of two or more independent grounds, and one of those grounds is insufficient."

In *Garcia*, defendant was convicted of aiding and abetting felony murder and burglary. The victim was found shot to death near his pickup truck in the yard of his residence. The burglary was charged as being of the farmhouse or pickup truck. The convictions were reversed on the ground there was no evidence that the pickup truck had been entered or had been intended to be entered.

Defendant's reliance on *Garcia* is misplaced. Defendant's intent at the time of entry into the residence is not the sole question. He was charged with *entering into* or *remaining within* the residence to commit (alternatively) the three charged felonies. From the facts herein, the most likely scenario is that the entry was made with the intent to commit a theft and that the owner's return was a surprise. But, there was ample evidence that defendant remained on the premises with the intent to commit the aggravated kidnapping and rapes. Accordingly, the jury could have found the requisite intent to commit each of the three alternatively charged crimes. We find no merit in this issue.

## INSUFFICIENCY OF THE EVIDENCE

For his final issue, defendant contends the evidence identifying him as the perpetrator of the rapes, aggravated robbery, burglary, and theft was insufficient. He concedes the identification evidence as to the aggravated kidnapping, aggravated burglary, and battery was sufficient.

When the sufficiency of the evidence is challenged, the standard of review on appeal is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Graham*, 247 Kan. 388, 398, 799 P.2d 1003 (1990).

Defendant argues that because P.K. only saw his face while the two were in the great room of her residence there was insufficient evidence of identity on the other crimes. Also, he points out that an expert testified that certain Negroid hairs found on P.K.'s clothing and bed covers were not from defendant.

Evidence supporting the defendant being the perpetrator of the challenged crimes may be summarized as follows. Defendant forced P.K. to walk to the bedroom; her assailant then threw her on the bed and raped her. There was no break or gap in the time sequence. Although a pillow had been placed on her head, P.K. saw the rapist's shirtsleeves, which she testified were made of the same plaid fabric as the shirt defendant wore in the great room. P.K. was holding her coin purse when she entered her home. This remained clutched in her hand until it was forcibly removed while she was on the bed. She heard the assailant going through her credit cards and identification documents. A fingerprint identified as defendant's was found on one of these cards. During the second rape, Vaseline was used as a lubricant. Fingerprints belonging to defendant were found on the tube of Vaseline as well as on a knife found in the bedroom. The jury could have concluded the knife was the metal weapon used at the time P.K.'s necklace was removed.

Additionally, P.K.'s assailant talked to her throughout the events. She testified the voice was that of defendant. P.K. did not testify to hearing any sounds that were consistent with a second man being present—no conversations, footsteps, etc.

As far as the crimes occurring at the daughter's next-door residence, both residences were entered by kicking in a door, leaving a tennis shoe imprint on each. The two residences are located close to each other and attached together by a breezeway. The daughter left her home at 8:00 a.m. on the morning in question and returned at 10:45 a.m. The premises were burglarized in the interim. P.K.'s residence was entered that same morning, with the burglary thereof being in progress when P.K. returned home at 10:15 a.m. The evidence that defendant committed the burglary and theft at the daughter's residence is circumstantial. However, the circumstantial evidence is strong. That two residences, connected by a breezeway, could be the subjects of unrelated burglaries in the narrow time frame herein with identical circumstances of entry is so unlikely as to be unrealistic. We have long held that a conviction of even the gravest offense may be sustained by circumstantial evidence. *State v. Hupp*, 248 Kan. 644, Syl. ¶ 5, 809 P.2d 1207 (1991).

A review of all the evidence, when viewed in the light most favorable to the prosecution, convinces us that a rational factfinder could have found the defendant was the perpetrator of all crimes of which he was convicted and thus guilty beyond a reasonable doubt.

The judgment is affirmed.