No. 85,731

STATE OF KANSAS, *Appellee*, v. GERRY A. BURDEN, *Appellant*.

69 P.3d 1120

Review of the judgment of the Court of Appeals in 30 Kan. App. 2d 690, 46 P.3d 570 (2002).

Opinion filed June 6, 2003.

*Mary Curtis*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with her on the brief for appellant.

*Debra S. Peterson*, assistant district attorney, argued the cause, and *Richard A. Olmstead*, assistant district attorney, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, C.J.: Gerry A. Burden appealed his jury trial conviction of aggravated kidnapping (K.S.A. 21-3421); rape (K.S.A. 2002 Supp. 21-3502[a][1]); aggravated criminal sodomy (K.S.A. 21-

3506[a][3]); and criminal threat (K.S.A. 21-3419[a][1]). Defendant raised four issues: (1) whether the district court erred in failing to remove potential jurors for cause; (2) whether the evidence was sufficient to support his aggravated kidnapping conviction; (3) whether the instruction on criminal threat was misleading, and (4) whether there was prejudicial prosecutorial misconduct. The Court of Appeals decided issues (1), (3), and (4) in favor of the State, and affirmed defendant's convictions for rape, aggravated criminal sodomy, and criminal threat. Regarding issue (2), the Court of Appeals held there was insufficient evidence of a taking or confinement and reversed the defendant's aggravated kidnapping conviction. *State v. Burden*, 30 Kan. App. 2d 690, 46 P.3d 570 (2002).

Both parties petitioned for review. We granted the State's petition for review of issue (2) and denied the defendant's petition for review on the other issues.

## FACTS

There were, in essence, three different versions before the jury of the events giving rise to the charges herein. The first is what the victim, C.G., related to police officers and health care workers within a relatively short time after the incident (approximately 3 days) as well as what these individuals observed. This testimony may be summarized as follows. Defendant and C.G. were residing in defendant's residence during the evening of January 15, 2000. While the pair were in the bathroom, defendant became angry with C.G. and began hitting her. He ripped her clothes off and digitally raped and sodomized her. C.G., naked, broke away and ran to the back door. Before she could get through the door, defendant caught up with her, placed a choke hold on her, and forced her down the hall and into a bedroom where he threw her on the bed and hit and choked her. In the bedroom, defendant told her he was not through with her yet and threatened to kill her. He told C.G. that he knew he would be going to jail for what he was doing to her, but he did not care. C.G. faked unconsciousness as she was afraid he would kill her. Defendant told her to get dressed and walked her outside where she broke away and ran to a neighbor's house for assistance. Police were then summoned.

Defendant's version was that he and C.G. had an argument in the bathroom where he slapped her two or three times. C.G. then walked to the bedroom. He followed and slapped her two more times and told her to leave, which she did. He followed her to the edge of the property. He specifically denied that any sexual offenses had occurred or that he had prevented her escape, choked her, forced her down the hallway, or threatened her.

C.G.'s version of events in her trial testimony was markedly different than her earlier statements. She soft-pedaled the whole incident and, practically speaking, recanted her prior statements. At time of trial, she was living part-time in the same residence where the crimes had occurred.

## STANDARD OF REVIEW

The State contends the Court of Appeals erred by reversing defendant's aggravated kidnapping conviction because there is sufficient evidence to support the taking or confinement element of aggravated kidnapping. When the sufficiency of evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Mason*, 268 Kan. 37, 39, 986 P.2d 387 (1999). The trial testimony of defendant and C.G. would not support any of the convictions. The jury obviously believed the testimony as to statements and observations made within the first 3 days of the incident underlying the charges herein.

## THE KIDNAPPING STATUTES

The statutes relevant to the issue presented are found at K.S.A. 21-3420 and K.S.A. 21-3421. K.S.A. 21-3421 states in relevant part that aggravated kidnapping is kidnapping, as defined in K.S.A. 21-3420, when bodily harm is inflicted upon the person kidnapped. Kidnapping was charged under K.S.A. 21-3420(c). K.S.A. 21-3420 provides:

"Kidnapping is *the taking or confining of any person*, accomplished by force, threat or deception, with the intent to hold such person:
(a) For ransom, or as a shield or hostage;

(b) to facilitate flight or the commission of any crime;

(c) *to inflict bodily injury or to terrorize the victim* or another; or

(d) to interfere with the performance of any governmental or political function." (Emphasis added.)

No issue is raised as to the sufficiency of the evidence of bodily harm necessary to support aggravated kidnapping. Rather, defendant contends the evidence does not support a kidnapping conviction as there was insufficient evidence that a taking or confining had occurred.

## COURT OF APPEALS OPINION

Defendant's arguments and the Court of Appeals' analyses and resolution thereof are as follows:

"Burden argues that, under *State v. Buggs,* 219 Kan. 203, 547 P.2d 720 (1976), the taking in this case from the back door into the bedroom was slight or inconsequential; thus it was inadequate to support the taking or confinement element of 21-3420. In *Buggs,* the Supreme Court held:

'[I]f a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:

'(*a*) Must not be slight, inconsequential and merely incidental to the other crime;

'(*b*) Must not be of the kind inherent in the nature of the other crime; and

'(*c*) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.' 219 Kan. at 216.

In Burden's view, even if he dragged C.G. from the back door to the bedroom to continue hitting her, this movement was only incidental to the beating and had no significance independent of it.

"The State argues that the *Buggs* analysis was developed in the context of a 21-3420(b) kidnapping, *i.e.,* one to facilitate flight or commission of another crime, rather than a 21-3421(c) kidnapping, one to inflict bodily injury or terrorize the victim or another. It also cites to *State v. Richmond,* 250 Kan. 375, 377, 827 P.2d 743 (1992) (describing *Buggs* as '[t]he leading case on what is required to be proven to establish the facilitation of the commission of any crime provision of K.S.A. 21-3420[b]'), suggesting *Richmond* emphasizes that the *Buggs* analysis is applicable *only* in 21-3420(b) cases. See also *State v. Fisher,* 257 Kan. 65, 75, 891 P.2d 1065 (1995) ('*Buggs* is the leading Kansas case which discusses in depth the crime of kidnapping and the elements necessary to establish the offense where a taking or confinement occurs to facilitate the commission of another crime.').

"Although the State is correct that several of the other later cases cited by Burden also arose out of 21-3420(b) kidnappings rather than 21-3420(c) kidnappings like this one, see, *e.g.*, *Fisher*, 257 Kan. at 74-78; *State v. Hays*, 256 Kan. 48, 61-63, 883 P.2d 1093 (1994), it fails to recognize that *Buggs* addressed an element of the kidnapping statute common to *both* facilitation and bodily injury cases. In all simple and aggravated kidnappings—whether effected to facilitate another crime or to inflict bodily injury or for one of the other reasons listed in the statute—the State must prove a taking or confinement. The interchangeable specific intent subsections of the statute on which the State wants us to focus define proof alternatives for a *different element* of the offense.

"In the end, the State's argument misses the point of Burden's attack on the sufficiency of the evidence. *Buggs* did not merely set forth the minimum evidentiary threshold for demonstrating the presence of only one or the other type of specific intent required for a kidnapping. It also set forth the minimum evidentiary threshold for demonstrating the presence of the common, and constant, element of taking or confinement. See *State v. Wiggett*, 273 Kan. 438, 445, 44 P.3d 381 (2002) (*Buggs* court sought to define, distinguish "taking" requirement of kidnapping from incidental movement that often occurs during robbery or rape). It is this element on which Burden asserts the evidence against him comes up short.

"*State v. Mahlandt*, 231 Kan. 665, 647 P.2d 1307 (1982), is demonstrative. In that 21-3420(c) case, there was evidence the clerk in a store that defendant had just robbed was forced from the store and into defendant's car. The clerk was able to escape before the defendant drove out of the store's parking lot. The defendant argued on appeal that this evidence supported only an attempted kidnapping rather than the completed crime. The Supreme Court rejected this argument, specifically discussing under the *Buggs* standard whether the evidence proved a completed taking from the store and a completed confinement in defendant's car. 231 Kan. at 670-71.

"In contrast, other subsection (c) bodily injury cases that have not discussed *Buggs* generally address a kidnapping element other than taking or confinement. See *State v. Higgenbotham*, 264 Kan. 593, 607, 957 P.2d 416 (1998) (although court mentions challenge to sufficiency of evidence on taking and confinement, it discusses only challenge to sufficiency of evidence on force, threat, or deception); *State v. Dubish*, 234 Kan. 708, 716-17, 675 P.2d 877 (1984) (challenge to sufficiency of evidence on specific intent to inflict bodily injury or terrorize); *State v. Racey*, 225 Kan. 404, 408, 590 P.2d 1064 (1979) (challenge to sufficiency of evidence on force, threat, or deception). These cases simply do not prevent us from doing exactly what we think the Supreme Court intended for us to do when the sufficiency of the evidence of a taking or confinement is challenged: We evaluate the facts of the case under the *Buggs* standard.

"When we do so here, we see that Burden beat, sodomized, and raped C.G. in the bathroom, that she then ran from the bathroom to the vicinity of the back door, and that Burden caught up with her and dragged her back to the bedroom where he continued to batter her and choked her and threatened to kill her. Even

viewing this evidence in the light most favorable to the State, we agree with Burden that *Buggs* dictates a holding that the movement of C.G. from the back door to the bedroom was part and parcel of the beating rather than a crime apart from it. The evidence of a taking and confinement was not independent of the other crimes Burden perpetrated. His movement of C.G. only enabled him to continue what he had started and was incidental to it. Burden's conviction for aggravated kidnapping must be reversed." 30 Kan. App. 2d at 698-99.

## DISCUSSION

The State contends it was error for the Court of Appeals to apply the *Buggs* K.S.A. 21-3420(b) three-pronged facilitation test to a kidnapping charge under K.S.A. 21-3420(c) (to terrorize or inflict bodily harm) and reverse the conviction. We agree.

The *State v. Buggs*, 219 Kan. 203, 547 P.2d 720 (1976), opinion was construing the version of K.S.A. 21-3420 which became effective July 1, 1970. Buggs was convicted of aggravated kidnapping under K.S.A. 21-3420(b), kidnapping with intent to facilitate the commission of a crime. In *Buggs*, the aggravated kidnapping victim and her son had closed her Dairy Queen store and were outside the building when Buggs forced them back inside the store. The woman was robbed and then raped.

The issue presented in *Buggs* was stated as follows:

"The defendants' main point on appeal is that their conduct did not constitute a 'kidnapping' of either Larry or Mrs. Penner. It is defendants' contention that the movement and confinement of both victims were only 'minor and inconsequential,' and were 'merely incidental' to the real crimes of robbery and rape. They point out that every robbery and every rape is accompanied by some movement or at least some detention of the victim. To construe our kidnapping statute so as to cover their conduct here, they say, is to convert every robbery and every rape into the more serious offense of kidnapping. And, they say, to permit their convictions for kidnapping in addition to the robbery and rape is in each instance to carve two offenses out of what is essentially one." 219 Kan. at 209.

Buggs asked this court to redefine what constituted a taking or confining and to restrict what conduct was encompassed within those terms.

In declining to do so, the *Buggs* court stated:

"We rejected similar contentions when made under our former kidnapping statute, K.S.A. 21-449. In *State v. Brown*, 181 Kan. 375, 312 P.2d 832, we held that a charge of first degree kidnapping with harm was properly joined with a

charge of rape where both charges arose out of one transaction. The elements of the two crimes were different, although the rape supplied the requisite bodily harm for the kidnapping. In that case we also reviewed at length the history of kidnapping from the time of Moses through the common law, culminating in the federal Lindbergh law and the then current state kidnapping statutes. We observed that 'kidnapping' has a recognized meaning:

'. . . Both under the common law and under a statute, unless clearly modified, it means to take and carry away any person by unlawful force or by fraud, and against his will.' (*Id.* at 388.)

"*Brown* was followed by *State v. Ayers*, 198 Kan. 467, 426 P.2d 21, another kidnap-rape case in which the main thrust of the attack was on the amount of asportation required rather than on the alleged duplicity of the counts. In *Ayers* the victim was taken from a car to a shelter house some eleven feet away and there raped. Referring to *State v. Brown*, supra, we said:

'. . . In *Brown*, we considered the words of the statute (21-449, *supra*), as well as common-law language and said "kidnap," means to take and carry away any person by unlawful force or fraud and against his will. We attached no other requirements such as a minimum distance of asportation. It is the fact, not the distance, of forcible removal of the victim that constitutes kidnapping. 1 Am. Jur. 2d, Abduction and Kidnapping, § 18, p. 172. [Citations omitted.]" 219 Kan. at 209-210.

The *Buggs* court then discussed various cases from New York, California, and Michigan which had placed restrictions on what constituted a taking or confining. The *Buggs* court then rejected placing restrictions on our statute as to what constitutes a taking or confining.

The *Buggs* court reasoned:

"Our present statute, K.S.A. 21-3420, became effective July 1, 1970, as part of a complete revision of our criminal code proposed by the Judicial Council. It provides:

'Kidnapping is the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person:

'(*a*)   For ransom, or as a shield or hostage; or

'(*b*)   To facilitate flight or the commission of any crime; or

'(*c*)   To inflict bodily injury or to terrorize the victim or another; or

'(*d*)   To interfere with the performance of any governmental or political function.'

"The Judicial Council notes indicate that it combines elements of the Model Penal Code, § 212.1, the New Mexico Criminal Code, § 40A-4-1, and former K.S.A. 21-449. A comparison of our statute with its sources indicates that subsections (*a*) through (*d*) defining the required specific intent are substantially the

same as the corresponding subsections of Model Penal Code § 212.1. That section provides in pertinent part:

'A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business, or a substantial distance from the vicinity where he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with any of the following purposes:

'(a)   to hold for ransom or reward for release, or as shield or hostage; or

'(b)   to facilitate commission of any felony or flight thereafter; or

'(c)   to commit bodily injury or to terrorize the victim or another; or

'(d)   to interfere with the performance of any governmental or political function.'

"Further comparison readily shows, however, that the portion of our statute dealing with the proscribed physical conduct of the kidnapper differs markedly from the corresponding portion of the Model Penal Code. The Model Code requires removal of the victim 'from his place of residence or business, or a substantial distance;' the Kansas statute merely requires a 'taking.' The Model Code requires that confinement be 'for a substantial period in a place of isolation;' the Kansas statute merely requires a 'confining.' It is the unembellished 'taking' and 'confining' language that was borrowed from New Mexico.

"The Model Penal Code's language is clearly designed to implement the rationale adopted in New York and California, and, of course, the A. L. I. comment quoted with approval in *Daniels*, supra. The drafters of our statute, however, specifically considered this language and rejected it in favor of the unqualified 'taking or confining.' We can only construe this bit of legislative draftsmanship as rejecting not only the language of the Model Penal Code, but at least to some extent the rationale underlying it.

"*We therefore construe our statute as requiring no particular distance of removal, nor any particular time or place of confinement. Under our present statute it is still the fact, not the distance, of a taking (or the fact, not the time or place, of confinement) that supplies a necessary element of kidnapping.*" (Emphasis added.) 219 Kan. at 213-14.

Following this discussion of the taking or confinement element, the *Buggs* court then proceeded to discuss the meaning of holding the victim "to facilitate . . . the commission of any crime." The court reasoned:

"Such a construction [of taking or confinement], however, cannot be entirely unqualified. Our statute requires that the taking or confinement be accomplished not only by the proscribed means (*i.e.*, 'by force, threat or deception') but also with the specific intent to accomplish one of four types of objectives. The first, to hold the victim for ransom or as a shield or hostage, gives no concern to us or to any other court. The cases discussed above all recognize, either explicitly or implicitly, that a taking for these purposes is a 'classic' or 'pure' form of kidnapping.

Further, the confinement of the victim for these purposes supplied 'a necessary alternative to asportation' (*People v. Adams*, supra) in the same way that the commission of a felony supplies a necessary alternative to premeditation in a first degree murder charge.

"We are concerned here with the second type of intent, *i.e.*, to hold the victim '(*b*) to facilitate . . . the commission of any crime.' It is when this purpose is present that the New York, California and Michigan courts have problems. Their rationale is that if the only purpose and result of the taking is to facilitate a lesser crime, the taking is by definition 'merely incidental' to the lesser crime and the kidnapping statute was therefore not intended to cover it. We cannot adopt that rationale without ignoring the rather plain language of subsection (*b*). Under our statute a taking is a kidnapping if its purpose *is* to 'facilitate' the commission of any crime, even if the crime facilitated be a less serious crime such as robbery or rape.

"That does not end the inquiry, however. The key word, as we see it, is 'facilitate.' Webster defines it as 'to make easier or less difficult: free from difficulty or impediment.' (Webster's Third New International Dictionary.) See also, the Oxford English Dictionary: 'To render the performance of (an action), the attainment of (a result).' To be kidnapping, therefore, the taking need not be *necessary* to the accomplishment of the underlying crime, but it must be aimed at making it at least 'easier.'

"Further, to 'facilitate' in our minds means something more than just to make more convenient. We think that a taking or confining, in order to be said to 'facilitate' a crime, must have some significant bearing on making the commission of the crime 'easier' as, for example, by lessening the risk of detection.

. . . .

"We therefore hold that if a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:

'(*a*)   Must not be slight, inconsequential and merely incidental to the other crime;

'(*b*)   Must not be of the kind inherent in the nature of the other crime; and

'(*c*)   Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.'

"For example: A standstill robbery on the street is not a kidnapping; the forced removal of the victim to a dark alley for robbery is. The removal of a rape victim from room to room within a dwelling solely for the convenience and comfort of the rapist is not a kidnapping; the removal from a public place to a place of seclusion is. The forced direction of a store clerk to cross the store to open a cash register is not a kidnapping; locking him in a cooler to facilitate escape is. The list is not meant to be exhaustive, and may be subject to some qualification when actual cases arise; it nevertheless is illustrative of our holding.

"Applying the principles above to our present case, we hold that the conduct of the defendants constituted kidnapping under our statute. The Penners were accosted outside the Dairy Queen, at the fringe of the parking lot, where they were subject to public view. Mrs. Penner had the day's receipts with her, and the robbery could have been accomplished then and there. If the money was inside, the defendants could have gone in after it without taking the Penners with them. Instead, the defendants forced the Penners to return to the relative seclusion of the inside of the store. That movement, slight though it was, substantially reduced the risk of detection not only of the robbery but of the rape. Except in the matter of distance, which we are holding to be irrelevant, it was as if the defendants had seized the Penners at home and forced them to return to the store before the robbery and rape. There was, in our view, a taking and confinement to 'facilitate' the commission of the robbery and rape." 219 Kan. at 214-17.

In summary, what the *Buggs* court did was to leave unchanged the prior law of what constitutes a taking or confining under the kidnapping statute. Specifically, our kidnapping statute, K.S.A. 21-3420, requires no particular distance of removal, nor any particular time or place of confinement. Under that statute it is the fact, not the distance, of a taking (or the fact, not the time or place, of confinement) that supplies a necessary element of kidnapping.

The *Buggs* court then held that if there was a taking (or confinement) and that taking (or confinement) was with the intent to facilitate the commission of another crime, then certain tests need to be applied. As the court stated: *If a taking or confining is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement*: (a) must not be slight, inconsequential, and merely incidental to the other crime; (b) must not be of a kind inherent in the nature of the other crime; and (c) must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.

The three-pronged *Buggs* test is applicable in determining whether the taking or confining was done with the intent to facilitate flight or the commission of another crime as set forth in subsection (b). There is nothing in *Buggs* that would indicate these three restrictions were intended to apply to any taking or confining charged under any subsection other than (b). In fact, the language in *Buggs* is to the contrary. There is no underlying crime intended

to be facilitated under (c); the taking or confining is done with the intent to inflict bodily injury upon or to terrorize the victim or another; facilitation is irrelevant herein.

The Court of Appeals reliance on *State v. Mahlandt*, 231 Kan. 665, 647 P.2d 1307 (1982), is misplaced. In *Mahlandt*, the victim was robbed in a store and then taken outside and forced into defendant's automobile. As the defendant attempted to start the car, the victim escaped. The defendant was charged and convicted of aggravated kidnapping under subsection (c). The kidnapping issue in *Mahlandt* was whether or not the jury should have been instructed on attempted kidnapping. The *Mahlandt* court cited *Buggs* as follows:

"The issue here turns on the degree of asportation required to constitute a 'taking' under the statute. In *State v. Buggs*, 219 Kan. 203, 214, 547 P.2d 720 (1976), this court construed the statute as requiring no particular distance of removal, nor any particular time or place of confinement. Rather, it is the fact and not the distance of the taking that supplies the necessary element of kidnapping.

"Here the evidence was sufficient to establish an actual taking of the victim. Either the defendant was guilty of kidnapping under the statute or he was not guilty, depending on the jury's belief of the evidence. There was no evidence of an attempt to kidnap.

"The uncontroverted evidence here shows that the victim was forced from the store despite her attempt to fight and get away, and was physically placed by the defendant in his car. It was only after the defendant went around to the other side of his car to get in, and started up the car to drive away that the victim was able to escape. Once the defendant secured the victim in his car it is clear that she was under his control and a taking had occurred." 231 Kan. at 671.

Facilitation under subsection (b) was not at issue in *Mahlandt* and, accordingly, the special three-pronged *Buggs* facilitation test was not mentioned.

## CONCLUSION

The *Buggs* three-pronged facilitation test is inapplicable to kidnapping charged under K.S.A. 21-3420(c), and the Court of Appeals erred in extending this test to a subsection (c) case.

Under the evidence herein, the jury was presented with evidence that defendant had beaten, stripped, raped, and sodomized the victim in the bathroom. Thereafter, the victim, naked, broke

free and ran to the back door of the kitchen to escape. Before she could get through the door, she was caught by defendant, who placed her in a choke hold and forced her down the hall and into a bedroom where he beat and threatened to kill her. This is sufficient evidence that a taking occurred with intent to terrorize or commit bodily injury on the victim.

The judgment of the Court of Appeals reversing the aggravated kidnapping conviction is reversed. The judgment of the district court is affirmed.

ALLEGRUCCI, J., dissenting.

ABBOTT and GERNON, JJ., not participating.

BRAZIL, S.J., and LARSON, S.J., assigned.