NOT DESIGNATED FOR PUBLICATION

No. 125,719

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

GOVAN BRANDON MILLS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Osborne District Court; PRESTON PRATT, judge. Submitted without oral argument. Opinion filed April 5, 2024. Affirmed in part and dismissed in part.

*Darby VanHoutan*, of Kansas Appellate Defender Office, for appellant.

*Paul S. Gregory*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ISHERWOOD, P.J., GREEN and PICKERING, JJ.

PER CURIAM: This is the direct appeal of Govan Brandon Mills' criminal convictions of aggravated domestic battery and aggravated kidnapping with intent to inflict bodily injury or terrorize the victim. He asserts that there was insufficient evidence to support his aggravated kidnapping conviction; the district court erred in scoring his criminal history; and the district court abused its discretion in denying his motion for departure. After reviewing the record, we affirm Mills' convictions and sentences and dismiss the issue relating to Mills' departure motion.

MILLS' ACTIONS LEAD TO HIS ARREST AND CONVICTIONS

After meeting on Facebook, Mills picked up H.M. from her home in Arkansas and moved her into his house in Osborne, Kansas, on Sunday, November 7, 2021. H.M. accompanied Mills to his job as a farm worker and sometimes assisted with his job functions. Mills and H.M. were strictly roommates at first until Tuesday, November 9, 2021, when Mills expressed romantic interest and H.M. agreed. The next day— Wednesday— H.M. and Mills had an argument after Mills asked H.M. to unblock her number on his phone but then snatched the phone back from H.M. Later that day, Mills and H.M. had further altercations, which included Mills pulling H.M. out of his truck and then trying to drag her back into the truck before choking her.

On Saturday, November 13, 2021, Mills and H.M. got off work, went to the liquor store, and returned home for dinner. After dinner, Mills and H.M. went to Mills' bedroom and drank a fifth of Peach Crown and smoked marijuana. During the evening, H.M. thought about the Wednesday incident and told Mills not to put his hands on her again. H.M. had told Mills that she experienced abuse in prior relationships. Mills did not respond; shortly after, he grabbed a backpack and left the house. Mills messaged H.M. after he left the house telling H.M., "[D]on't start no shit." Mills returned to the house and went to bed. H.M. opened Mills' bedroom door and entered the room to discuss Wednesday's incident further. H.M. began talking about the incident without response from Mills and raised her voice at some point. Mills got out of his bed and began hitting and kicking H.M. H.M. moved herself out of the bedroom and into the dining room. Mills followed H.M. into the dining room and began hitting and kicking H.M.'s upper body as she curled herself up to protect her head. During this, Mills told H.M., "[B]itch, you ain't got much to say anymore. You got something else to say, you want to say something else?" as H.M. pleaded for Mills to stop. H.M. testified that Mills choked her at some point.

H.M. got up and tried to exit through the front door of the house. She opened the front door and tried the small lock on the screen door while pushing on the glass, but she did not open the screen door because it had an extra lock that she did not know about. Mills and H.M. had always used the back door to enter and exit the house. After H.M. reached the front door, Mills grabbed her and pulled her back saying, "[B]itch, where the fuck do you think you're going?" H.M. testified that it was not a light grab because she was not going back into the house's interior willingly. Mills took H.M. back to the dining room and continued hitting and kicking her. H.M. got up and ran for the front door a second time, but the extra lock again prevented her from opening the screen door. Mills again pulled H.M. back from the door, saying, "[B]itch, where the fuck do you think you're going," and continued hitting and kicking H.M. As Mills kept striking H.M., he told her, "[B]itch I'll kill you. I don't care to go back to prison. You ain't got much to say now, do you?"

Later, Mills ripped off H.M.'s clothes. H.M. told Mills that she needed to use the restroom. After Mills refused her request, H.M. lost her bowels on the floor. Mills stopped striking H.M. shortly after that and made H.M. clean up her blood and feces. Mills then told H.M. to shower and go to his bed. H.M. testified on direct examination that after she showered, she walked into the kitchen while drying off and, upon seeing Mills walk out of the kitchen into the dining room, ran out of the back door naked. On cross-examination, H.M. stated that she was in the bathroom drying off when she saw Mills walk into the dining room; she then dropped her towel and ran out of the back door. H.M. eventually entered a neighbor's house through an unlocked door, and the neighbor contacted police. The record does not indicate that Mills followed H.M. after she ran out of the back door.

After police arrived at Mills' house, officers noted a scrape on Mills' knuckle, which he said was caused by farming equipment. Officers also noted blood on Mills' elbows and foot, which he said came from cleaning up blood in the house. Mills told

3

officers that blood found in the house was from H.M. Mills stated he knew nothing about injuries to H.M.'s throat. Mills admitted to kicking H.M. but said he only kicked her in her hands as she curled herself up.

H.M.'s medical evaluations showed bruising and swelling on her neck, face, ears, and upper arms. Megan Meier, a nurse who treated H.M., testified that the bruising on H.M.'s face and ears tracked with blunt force trauma or strangulation among other possible causes. H.M. had tenderness on both sides of her ribs, back pain, a bloody nose, and blood in her ear caused by head trauma. CT scans showed swelling from H.M.'s head to her lower ribs, along with a broken nose and a punctured lung.

The jury convicted Mills of aggravated domestic battery under K.S.A. 2021 Supp. 21-5414(b)(1) and aggravated kidnapping with intent to inflict bodily injury or terrorize the victim under K.S.A. 2021 Supp. 21-5408(a)(3), (b).

After the trial, Mills filed a letter wishing to have his trial counsel withdrawn for ineffective assistance of counsel. He claimed that his trial counsel should have pursued a mental health disorder defense instead of a voluntary intoxication defense. Mills later changed his mind about removing his trial counsel. Counsel later filed a motion for a new trial for pursuing the wrong defense, but the district court summarily dismissed the motion for being out of time.

Prior to sentencing, Mills moved for either a durational or dispositional departure to his sentence, which the district court denied. At sentencing, the district court scored Mills' criminal history as C after including Mills' 2013 felony evasion conviction in Mississippi as a person felony. Mills filed a motion challenging his criminal history score, asserting that his Mississippi felony evasion conviction was a nonperson felony and his criminal history score should have been E. The district court denied the motion, relying on *State v. Hasbrouck*, 62 Kan. App. 2d 50, 506 P.3d 924, *rev. denied* 316 Kan.

4

761 (2022), and *State v. Baker*, 58 Kan. App. 2d 735, 475 P.3d 24 (2020), to conclude that Mississippi's felony evasion law qualified as a person offense under the revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-6801 et seq.

The district court sentenced Mills to 285 months in prison on the aggravated kidnapping charge and 13 months in prison on the aggravated domestic battery charge, with the sentence for the aggravated domestic battery charge to be served consecutive to the aggravated kidnapping sentence.

MILLS RAISES THREE ISSUES ON APPEAL

I.      *Sufficient Evidence Supports Mills' Conviction for Aggravated Kidnapping*

We review the evidence in a light most favorable to the State when the sufficiency of the evidence is challenged in a criminal case. In so doing, we "'determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt.'" *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021). In our review, we will not "reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses.'" 313 Kan. at 209.

*Mills argues that the evidence was insufficient to support his aggravated kidnapping conviction.*

Mills asserts a sufficiency of evidence challenge in three parts. First, he submits that the State failed to show sufficient evidence of "taking or confining" using force or threat. Second, Mills argues that the State failed to show sufficient evidence of intent to inflict bodily injury or terrorize the victim.

5

The State responds that sufficient evidence supported the aggravated kidnapping conviction. It contends that sufficient evidence established a "taking or confining" and intent to inflict bodily injury or terrorize the victim.

The events here occurred after Mills and H.M. got off work. After dinner, the two drank Peach Crown and smoked marijuana in Mills' bedroom. At some point, H.M. wanted to discuss the Wednesday incident, but Mills was not interested in talking about the incident. Mills left the house and went to bed after returning home. H.M. entered Mills' bedroom again wanting to discuss the Wednesday incident. Mills then got out of bed and began hitting and kicking H.M. After H.M. moved into the dining room, Mills kept hitting and kicking her. During these events, H.M. twice attempted to escape through the front door of the house. Both times, Mills grabbed her and pulled her back into the dining room before continuing to hit and kick her.

Eventually Mills stopped hitting and kicking H.M. and told H.M. to shower. After her shower, H.M. escaped through the back door of the house while Mills was in another room.

As the State asserts, the facts here are comparable with those in *State v. Burden*, 275 Kan. 934, 69 P.3d 1120 (2003), where the defendant beat, stripped, raped, and sodomized the victim in a bathroom. The victim broke free and attempted to run out of the back door of the kitchen before the defendant caught her, choked her, and forced her into a bedroom where he threatened to kill her. The *Burden* court considered those facts sufficient for a conviction for aggravated kidnapping with intent to inflict bodily injury or terrorize the victim. 275 Kan. at 944-45. Similarly, here, Mills kicked and hit H.M. as she twice attempted to escape through the front door of the house. Each time, Mills caught her, pulled her back into the dining room, and continued hitting and kicking her. Mills threatened to kill H.M. after the second escape attempt as he continued hitting and kicking her.

6

This case is also akin to *State v. Charles*, No. 119,346, 2019 WL 3242199 (Kan. App. 2019) (unpublished opinion). There, the defendant confronted the victim on the porch, grabbed her hair, and pulled her into the house. He locked the door and shut the windows. The victim tried to escape through a door in a bedroom before the defendant caught up and pulled her back. The victim ran for the door again after the defendant left the bedroom for the living room. The defendant returned to the bedroom, grabbed the victim, and squeezed her neck. The panel found those facts sufficient to establish confinement for kidnapping, stating: "Every time [the victim] tried to leave the house, Charles prevented her from doing so." 2019 WL 3242199, at *6.

These cases first indicate that, here, sufficient evidence allowed a rational fact-finder to conclude that Mills took or confined H.M. H.M. twice attempted to exit the house through the front door, and each time Mills grabbed her, pulled her back into the house's interior, and brought her back to the dining room. H.M. testified that she did not go back into the house willingly. Mills stopped H.M. each time she tried to leave the house. Those actions establish confinement.

Following the rationale in the above cases, we find that, in this case, sufficient evidence allowed a rational fact-finder to conclude that Mills confined H.M. with intent to inflict bodily injury or to terrorize her. Each time H.M. attempted to escape, Mills asked her where she thought she was going as he grabbed her and pulled her back. Mills then continued hitting and kicking H.M. after each escape attempt. After the second escape attempt, Mills threatened to kill H.M. as he continued hitting and kicking her, saying that he was not afraid to go back to jail. These facts allow a rational fact-finder to conclude that when Mills stopped H.M.'s escape attempts, he did it intending to inflict bodily injury upon or terrorize H.M.

Mills suggests that this case resembles *State v. Patterson*, 243 Kan. 262, 755 P.2d 551 (1988). There, the victim was in a car with the defendant and one other person when

7

the defendant beat the victim and held her against the door as the other person, at the defendant's command, stabbed the victim. Our Supreme Court found insufficient evidence of kidnapping because the victim was in the car voluntarily and never asked or attempted to leave. 243 Kan. at 265.

*Patterson*, however, is distinguishable. In this case, while H.M. was in the shared house with Mills voluntarily, she attempted to leave the house multiple times through the front door. Mills stopped her escape attempts and pulled her back into the interior of the house. That evidence allows a rational fact-finder to conclude that Mills confined H.M. There was no such evidence in *Patterson*.

*Mills argues that his aggravated kidnapping conviction and aggravated domestic battery conviction are multiplicitous.*

Before we address Mills' third and final argument, we note that this case illustrates how the parties' arguments and supporting caselaw may be significantly altered when a controlling decision issues during the pendency of the appeal.

For his final argument, Mills claims that his aggravated kidnapping conviction and the aggravated domestic battery conviction are multiplicitous. Mills argues that we should apply the test under *State v. Buggs*, 219 Kan. 203, 216, 547 P.2d 720 (1976)—as another panel of this court did in *State v. Butler*, No. 123,742, 2022 WL 3692866 (Kan. App. 2022) (unpublished opinion), *rev'd* 317 Kan. 605, 533 P.3d 1022 (2023). Under this test, we would be required to use the same facts to prove both the aggravated kidnapping conviction and the aggravated domestic battery conviction, thus finding that the convictions are multiplicitous. In other words, he argues that we should use the *Butler* panel's *Buggs* analysis to conclude that the jury used the same facts to convict him of both crimes.

The State counters that the *Butler* panel wrongly contradicted *Burden*, 275 Kan. 934, in applying the *Buggs* test and asks us not to follow the *Butler* decision. The State submits that the aggravated kidnapping conviction is valid under the "same-elements" test in *State v. Schoonover*, 281 Kan. 453, 475, 133 P.3d 48 (2006), because aggravated domestic battery and aggravated kidnapping do not have the same elements.

After the parties filed their briefs, the Kansas Supreme Court issued its decision in *State v. Butler*, 317 Kan. 605, 606, 533 P.3d 1022 (2023), reaffirming the rule in *Burden*, 275 Kan. 934, Syl. ¶ 3. The *Butler* court confirmed that when a defendant is charged with aggravated kidnapping with intent to inflict bodily injury or terrorize the victim, an appellate court will review the conviction applying the ordinary sufficiency of the evidence standard. 317 Kan. at 609. Notably, the *Butler* court did not apply the three-part test outlined in *Buggs*, 219 Kan. at 216, which applies only when a defendant is charged with aggravated kidnapping with intent to facilitate the commission of another crime. *Butler*, 317 Kan. at 609-10.

In light of *Butler*, we review Mills' conviction of aggravated kidnapping with intent to inflict bodily injury or terrorize the victim under the normal sufficiency of the evidence standard and the *Schoonover* "same-elements" test. See 281 Kan. at 475.

Multiplicity issues are reviewed under the "same-elements" test in *Schoonover*, 281 Kan. at 495. "Under that test, if one statute requires proof of an element unnecessary to prove the other offense, then the statutes do not define the same crime and are not multiplicitous." *Butler*, 317 Kan. at 611. To repeat what we noted above, the Kansas Supreme Court's decision in *Butler* confirms that the *Schoonover* "same-elements" test applies for aggravated kidnapping with intent to inflict bodily injury or terrorize the victim. *Butler*, 317 Kan. at 611.

The elements for Mills' aggravated kidnapping conviction are:

(1)     Mills took or confined H.M. by force, threat, or deception;

(2)     Mills did so with intent to hold H.M. to inflict bodily injury or to terrorize her;

(3)     bodily harm was inflicted upon H.M.; and

(4)     this act occurred on or about November 13, 2021.

See K.S.A. 2021 Supp. 21-5408(a)(3), (b); PIK Crim. 4th 54.220 (2019 Supp.).

The elements for Mills' aggravated domestic battery conviction are:

(1)     Mills knowingly impeded H.M.'s normal breathing or circulation of blood by applying pressure to the throat, neck, or chest;

(2)     Mills committed this act in a rude, insulting, or angry manner;

(3)     Mills and H.M. were family or household members, or were in a dating relationship; and

(4)     this act occurred on or about November 13, 2021.

See K.S.A. 2021 Supp. 21-5414(b)(1); PIK Crim. 4th 54.361 (2019 Supp.).

By comparing these two offenses, we can see that both offenses contain elements unnecessary to prove the other crime. For instance, the first three elements in aggravated kidnapping differ greatly from aggravated domestic battery, and the first three elements of aggravated domestic battery also differ from aggravated kidnapping. Therefore, Mills' aggravated kidnapping conviction is not multiplicitous with his aggravated domestic battery conviction.

We find in the light most favorable to the State that a rational fact-finder could have found the defendant guilty of both offenses independently beyond a reasonable doubt.

## II.  *The District Court Did Not Err in Scoring Mills' Criminal History*

Mills next argues that the district court erred in determining his criminal history score. We review this issue under a de novo standard because classification of prior crimes to determine a criminal history score involves interpretation of the KSGA, which is a question of law. *State v. Bryant*, 310 Kan. 920, 921, 453 P.3d 279 (2019).

### *The Rules That We Follow*

In classifying a person's criminal history, out-of-state convictions must be used. K.S.A. 21-6811(e)(1). If the conviction is a felony in the convicting state, it is counted as a felony in Kansas. K.S.A. 21-6811(e)(2)(A). A felony is a person felony if any one of a list of features is present in the elements of the out-of-state conviction. K.S.A. 21-6811(e)(3)(B)(i)(a)-(h). One of those features is if the elements require "the presence of a person, other than the defendant, a charged accomplice or another person with whom the defendant is engaged in the sale, distribution or transfer of a controlled substance or non-controlled substance." K.S.A. 21-6811(e)(3)(B)(i)(d).

In determining whether a prior offense may be used as a person felony in a person's criminal history, the district court is constitutionally prohibited under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *Descamps v. United States*, 570 U.S. 254, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013), from making additional factual findings beyond simply identifying the statutory elements of the primary offense. *State v. Dickey*, 301 Kan. 1018, 1038-39, 350 P.3d 1054 (2015).

*Mills Asserts His Mississippi Felony Was Improperly Scored*

Mills contends that the district court erred in concluding that his Mississippi felony evasion conviction required the presence of a person under K.S.A. 21-6811(e)(3)(B)(i)(d). He argues that the district court erred in including it as a person crime in Mills' criminal history. Mills suggests that "presence" requires the immediate presence of another person, not just tangential involvement. He also argues that the district court made factual findings not based on the explicit elements of the crime to conclude that a law enforcement officer had to be present when Mills committed the evasion offense. The State counters that the district court had the correct analysis comparing this case to *Baker* and *Hasbrouck* and including Mills' evasion conviction as a person felony.

In *Baker*, the defendant had a prior conviction in Missouri for felony resisting arrest. The elements for that crime were: (1) The defendant knew a law enforcement officer was making an arrest or stop of a person or vehicle, (2) the defendant resisted the arrest or stop by fleeing from the officer, (3) the defendant did so with the purpose of preventing the officer from completing the arrest or stop, and (4) the defendant fled in a manner creating a substantial risk of serious physical injury or death to any person. The panel in *Baker* concluded that those elements required the presence of a person other than the defendant, a charged accomplice, or another person engaged in certain drug sales under K.S.A. 2019 Supp. 21-6811(e)(3)(B)(i)(d). An officer had to be present during the crime because the officer had to attempt an arrest or stop, the defendant had to flee from the officer, and the officer would not be the defendant, an accomplice, or another person participating in drug dealings. *Baker*, 58 Kan. App. 2d at 743, 745-46.

The *Hasbrouck* panel approvingly noted the *Baker* panel's conclusion that arresting officers satisfy the "presence of a person" requirement while concluding that

12

Missouri's first-degree burglary statute qualified as a person offense. *Hasbrouck*, 62 Kan. App. 2d at 56-57.

With that in mind, we turn to the elements of Mills' Mississippi conviction for felony evasion, which are:

(1)    A law enforcement officer gave a visible or audible signal to stop by hand, voice, or emergency lights, and

(2)    Mills failed to stop in a way indicating reckless or willful disregard for the safety of persons or property or operated his vehicle in a way manifesting extreme indifference to the value of human life.

See Miss. Code Ann. § 97-9-72 (2013); *Williams v. State*, 126 So. 3d 85, 91 (Miss. Ct. App. 2013).

While Mills does not state that *Baker* was incorrectly decided, he does argue that a person could violate Mississippi's felony evasion statute in a way that does not satisfy the "presence of a person" requirement in K.S.A. 2021 Supp. 21-6811(e)(3)(B)(i)(d). He asserts this can be done when a person flees an officer altogether or when the officer giving the signal to stop is an undercover officer with whom the defendant engages in the sale, distribution, or transfer of a controlled or noncontrolled substance.

A different panel considered a similar contention in *State v. Shaffer*, No. 125,452, 2023 WL 5163294 (Kan. App. 2023) (unpublished opinion), *petition for rev. filed* September 8, 2023. In *Shaffer*, the defendant argued that *Baker* was incorrectly decided and that Missouri's felony resisting arrest statute was not a person felony. The defendant submitted that a defendant could violate the Missouri statute without satisfying Kansas' "presence of a person" requirement if the defendant heard from others that officers were

13

on their way to make an arrest and fled before the officers arrived, or if the arresting officer engaged in an undercover drug deal with the defendant.

The *Shaffer* panel found the first hypothetical unpersuasive because it required speculation by the defendant that officers were coming where the statute required knowledge of an attempted arrest. The panel rejected the second hypothetical because Missouri's resisting arrest elements mentioned nothing about drug transactions or conspiracies, nor did they require the presence of an accomplice or other party to a drug transaction. It also concluded that adopting the second hypothetical would render the "presence of a person" provision meaningless because by the defendant's reasoning, a person could commit nearly any crime against someone with whom they were previously involved in a drug transaction. 2023 WL 5163294, at *3. The panel also noted that while a drug offense involving an undercover officer would not be a person crime, the subsequent flight from the undercover officer is a separate crime which would qualify as a person crime. 2023 WL 5163294, at *4.

We agree with the *Hasbrouck*, *Baker*, and *Shaffer* panels and find that the district court did not err in classifying Mills' Mississippi felony evasion conviction as a person felony. Therefore, the district court did not erroneously score Mills' criminal history as C.

III.    *We Lack Jurisdiction to Consider the Denial of Mills' Motion for Departure*

Mills argues the district court abused its discretion when it denied his motion for departure. Prior to sentencing, Mills moved for either a dispositional or durational departure for his aggravated kidnapping and aggravated domestic battery sentences. Mills claimed that he had mental health disorders and that trial counsel had overestimated his criminal history score as A or B, which was the basis for him pursuing a jury trial rather than accepting a plea. The district court denied the motion and sentenced Mills to the

14

aggravated sentences in each presumptive gridbox for his aggravated kidnapping and aggravated domestic battery convictions.

Under the KSGA, appellate courts lack jurisdiction to consider challenges to the denial of motions for departure from presumptive sentences. K.S.A. 21-6820(c)(1); *State v. Farmer*, 312 Kan. 761, 764, 480 P.3d 155 (2021). The KSGA defines "'presumptive sentence'" as "the sentence provided in a grid block for an offender classified in that grid block by the combined effect of the crime severity ranking of the offender's current crime of conviction and the offender's criminal history." K.S.A. 21-6803(q). The aggravated sentence in the applicable grid block is considered a presumptive sentence. *State v. Williams*, 298 Kan. 1075, 1080, 319 P.3d 528 (2014). Thus, we lack jurisdiction to review the district court's denial of Mills' motion for a sentencing departure.

To conclude, we find that there was sufficient evidence to support Mills' aggravated kidnapping conviction, which was not multiplicitous with his aggravated domestic battery conviction. We also find that the district court did not err when scoring Mills' out-of-state evasion conviction as a person felony. And finally, we dismiss Mills' challenge to the district court's denial of his dispositional or durational departure for lack of jurisdiction.

Affirmed in part and dismissed in part.